# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| Prime-Site Media, LLC, | Case No. |
| Plaintiff, | Hon. |
| v. | **COMPLAINT** |
| Township of Macomb, | |
| Defendant. | |

Donald R. Sheff II (P78262)
PRIME-SITE MEDIA, LLC
Attorney for Plaintiff
220 South Main Street
Royal Oak, Michigan 48067
248-289-5895
dsheff@primesitellc.com

1

## COMPLAINT

Prime-Site Media, LLC ("PSM" or "Prime-Site") complains against defendant Township of Macomb ("Macomb" or the "Township") as follows:

## PARTIES

1. PSM is a Michigan limited liability company with its principal place of business located in the City of Royal Oak, County of Oakland, and State of Michigan.

2. Macomb is a Michigan municipal corporation located in Macomb County, Michigan.

## JURISDICTION AND VENUE

3. This action arises under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act, 42 U.S.C. § 1983.

4. The Court has jurisdiction over this action under 28 U.S.C. § 1331 because PSM asserts claims arising under the United States Constitution and 42 U.S.C. § 1983.

5. The Court has jurisdiction over this action under 28 U.S.C. § 1343(a)(3) and (4) because PSM seeks to redress the deprivation, under color of state law, of rights secured by the United States Constitution.

6. Venue is proper in the Court under 28 U.S.C. § 1391(b)(1) and (2) because the Defendant resides and PSM's claims arose in this judicial district.

## COMMON ALLEGATIONS

### Prime-Site's Proposed Speech

7. Prime-Site is engaged in the business of erecting and maintaining outdoor advertising displays, commonly known as billboards, on property it leases for that purpose. Prime-Site earns revenue by charging advertisers to display their messages on its billboards.

8. Prime-Site's signs display a wide range of noncommercial and truthful commercial messages that change every eight seconds. For example, the messages on Prime-Site's billboards involve political issues, paid and unpaid religious messages, unpaid memorial tributes, real estate advertisements, business sales, and employment opportunities.

9. Prime-Site desires to display a digital billboard at a parcel of real property adjacent to highway M-59 in Macomb Township identified by parcel/tax identification number 20-08-36-353-023 with permission of the property owner (the "Proposed Sign").

10. Digital signs, like the one Prime-Site proposes to erect in Macomb, incorporate unique technology that allow Amber Alerts, real-time weather warnings, and other time-sensitive emergency messages to be communicated to the public instantly.

11. The digital sign that Prime-Site proposes to erect in Macomb represents an extremely critical means of First Amendment communication.

## The Township's Sign Ordinance

12. Macomb regulates the display of signs through Chapter 20 of the Macomb Township Code (the "Sign Ordinance"). The Sign Ordinance, in its entirety, is attached to this Complaint as **Exhibit A** and is incorporated herein.

13. Macomb enacted, and enforces, its Sign Ordinance under color of state law.

14. The several sections of the Sign Ordinance are interdependent and constitute one complete act for the licensing and regulation of signs in the Township.

15. The Sign Ordinance states that "[i]t shall be unlawful for any person to erect, alter, or relocate any sign, sign structure or sign area subject to permit approval under the provisions of this chapter, without first obtaining appropriate permit(s) from the township and paying the required permit fee according to the schedule of fees established by the township board." Section 20-1.

16. "Signs displayed without required permits or outside of permitted size, location or time period limitations" are prohibited under the Sign Ordinance. Section 20-9.8.

17. The Sign Ordinance is expressly backed by the thread of criminal sanctions.

18. Specifically, a speaker that displays a sign in violation of the Sign Ordinance "shall be punished by a fine of not more than five hundred dollars ($500.00), or by imprisonment for not more than ninety (90) days, or by both such fine and imprisonment." Macomb Township Code, Section 1-9(a) (attached as **Exhibit B**). Furthermore, "every day upon which any such violation shall occur shall constitute a separate offense." *Id.*

19. Section 20-2 of the Sign Ordinance declares the Township's "Purpose" of its sign regulations. Macomb states that "[t]he provisions of this chapter shall be considered to be the minimum necessary to promote and protect the public health, safety, comfort, morals, and convenience."

20. Certain words and phrases identified in the Sign Ordinance are defined by Section 20-3.G.

21. The Sign Ordinance constitutes a facially content-based means of regulating signs in Macomb Township.

22. Under the Sign Ordinance, the regulatory treatment a sign receives depends on the content of the sign.

23. For instance, some of the content-based distinctions drawn under the Ordinance include "political signs," "directional signs," "time and temperature signs," signs that "advertis[e] the sale, rental, or lease of the premises or part of the premises on which the sign is displayed," signs that "identif[y] an architect,

5

contractor, subcontractor, lender or material/product supplier participating in construction on the property," and signs that "announce the proposed start of a residential, commercial or industrial real estate project." *See* Section 20-3.G.13, 14, 15, 40, 46, 50.

24. Some signs regulated under the Sign Ordinance do not contain any limit on their number, size, or height. For instance,

> a. *Political Signs* may be displayed anywhere in the Township; there is no limit on the number of political signs that may be displayed by a speaker. Section 20-4.F.

25. The Sign Ordinance defines an "off-premises sign" as a sign which "advertis[es] an establishment, merchandise, service or entertainment which is not sold, produced, manufactured or furnished at the property on which the sign is located." Section 20-3.G.32.

26. The definition of an "off-premises sign" is not limited to off-premises commercial content.

27. The definition of an off-premises sign is synonymous with the Sign Ordinance's definition of a "billboard." *See id.*; *see also* Section 20-3.G.6.

28. The Sign Ordinance makes clear that "billboard signs are . . . prohibited within the Township of Macomb." Section 20-8.B.

29. At the same time, the Sign Ordinance carves out broad exemptions from the off-premises/billboard content prohibition.

30. For instance, the Sign Ordinance allows the display of "political signs." *See* Section 20-4.F.

31. The Sign Ordinance also provides ambiguous regulatory treatment for "non-commercial" content:

    a. The Sign Ordinance purports to regulate "non-commercial signs" but, unlike the other categories of regulated content, it does not define what constitutes "non-commercial" content.

    b. The definitional ambiguity of a "non-commercial sign" becomes more acute when considering that the Sign Ordinance states that commercial "real estate signs . . . shall be considered to be temporary *non-commercial* signs." Section 20-4.A (emphasis added).

    c. The facial ambiguity persists as the Sign Ordinance expressly presupposes that "such signs" must be related to an "event, action, or activity" and must "be removed . . . within five (5) calendar days following completion or discontinuation of the event." Section 20-4.A.2.

32. One unambiguous aspect of the Sign Ordinance is the disparate regulatory treatment provided to signs, depending on the content.

33. For instance, the Sign Ordinance states that political signs, construction signs, and off-premises development signs can be larger and higher than non-commercial signs. However, political signs and construction signs can be taller than off-premises development signs.

### The Sign Ordinance's Regulation of Prime-Site's Speech

34. Prime-Site's Proposed Sign is subject to regulation under Macomb's Sign Ordinance as a "billboard"/"off-premises" sign because Prime-Site intends to display off-premises content.

35. Prime-Site's Proposed Sign is subject to regulation under Macomb's Sign Ordinance as a "political sign" because Prime-Site intends to display political content.

36. Prime-Site's proposed speech will be regulated differently under Macomb's Sign Ordinance based on the subject matter of the content its Proposed Sign displays.

### Legal Background

I. **Speech codes.**

   **A. The substantive constitutional doctrine.**

37. "The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws 'abridging the freedom of speech.'"

8

*Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) (quoting U.S. Const., Amdt. 1).

### 1. Content-based speech codes.

38. "[T]he phrase 'content based' requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id.*

39. A typical content-based speech code will often "draw distinctions" by regulating certain content from an otherwise content-neutral restriction. *See e.g.*, *id.* at 159-61 (exempting signs that displayed certain content from a generally applicable permit requirement); *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020) (exempting robocalls seeking to collect government debt from a robocall prohibition); *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 223 (1987) (exempting "newspapers and religious, professional, trade, and sports journals" from a "state sales tax scheme that taxes general interest magazines"); *Carey v. Brown*, 447 U.S. 455, 457 (1980) (exempting picketing related to a labor dispute from a general prohibition on picketing); *Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 93 (1972) (same).

40. In a classic example, the speaker in *Metromedia, Inc. v. City of San Diego* was subject to an ordinance that prohibited the display of off-premises signs, but exempted "signs located at public bus stops; signs manufactured, transported, or

9

stored within the city, if not used for advertising purposes; commemorative historical plaques; religious symbols; signs within shopping malls; for sale and for lease signs; signs on public and commercial vehicles; signs depicting time, temperature, and news; approved temporary, off-premises, subdivision directional signs; and '[t]emporary political campaign signs.'" 453 U.S. 490, 494-95 (1981). The Supreme Court "reject[ed] [the City's] suggestion that the ordinance may be appropriately characterized as a reasonable 'time, place, and manner' restriction" explaining that "[i]t is apparent . . . that the ordinance distinguishes in several ways between permissible and impermissible signs at a particular location by reference to their content. Whether or not these distinctions are themselves constitutional, they take the regulation out of the domain of time, place, and manner restrictions." *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 515 (1981).

41. Where a speech code exempts content from an otherwise content-neutral restriction, the entire scheme is held to be content-based on its face. *See e.g.*, *Reed*, 576 U.S. at 164 ("*The Town's Sign Code* is content based on its face.") (emphasis added); *Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. at 2347 ("In short, the robocall restriction *with* the government-debt exception is content-based.") (emphasis added); *Arkansas Writers' Project, Inc.*, 481 U.S. at 223 ("Arkansas faces a heavy burden in attempting to defend its content-based approach *to taxation of magazines*.") (emphasis added); *Carey*, 447 U.S. at 460 ("*[T]he Illinois statute*

10

discriminates between lawful and unlawful conduct based upon the content of the demonstrator's communication.") (emphasis added); *Mosley*, 408 U.S. at 95 ("The central problem *with Chicago's ordinance* is that it describes permissible picketing in terms of its subject matter.") (emphasis added).

42. A regulation of speech that is content based is "presumptively unconstitutional." *Reed*, 576 U.S. at 163.

43. To be constitutional, content-based speech codes must survive review under strict scrutiny.

44. "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Id.* at 165 (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)).

45. To satisfy strict scrutiny, the government bears the burden to demonstrate its content-based speech code is narrowly tailored to achieve a compelling government interest.

46. But if a content-based speech code is ordered to *discriminate* against certain content or viewpoints, it will never "be tolerated under the First Amendment." *See Arkansas Writers' Project, Inc.*, 481 U.S. at 230 ("Regulations which permit the Government to discriminate on the basis of the content of the message cannot be tolerated under the First Amendment.") (cleaned up).

11

### 2. Content-neutral restrictions on speech.

47. A law that "does not draw content-based distinctions on its face" is considered facially content-neutral. *McCullen v. Coakley*, 573 U.S. 464, 479 (2014).

48. To be constitutional, content-neutral restrictions on speech must survive review under intermediate scrutiny.

49. To satisfy intermediate scrutiny, the government bears the burden to demonstrate its content-neutral speech code is narrowly tailored and does not burden more speech than necessary to achieve a substantial governmental interest.

### 3. Tailoring defects.

50. The Supreme Court has identified "two analytically distinct grounds for challenging the constitutionality of a municipal ordinance regulating the display of signs" based on the ordinance's tailoring. *City of Ladue v. Gilleo*, 512 U.S. 43, 50 (1994).

51. First, a speech code may be unconstitutional because it is overinclusive.

52. If a speech code is overinclusive, it is "subject to attack on the ground that [it] simply prohibit[s] too much protected speech. *Id.* at 51 (citations omitted).

53. Second, a speech code may be unconstitutional because it is underinclusive.

54. The underinclusiveness doctrine states that "a law cannot be regarded as protecting an interest of the highest order, and thus as justifying a restriction upon

truthful speech, when it leaves appreciable damage to that supposedly vital interest unprohibited." *Republican Party of Minnesota v. White*, 536 U.S. 765, 780 (2002) (cleaned up).

55. When a speech code is found to be unconstitutional because it is underinclusive, the speech code, in its entirety, is declared unconstitutional. *See e.g.*, *Reed*, 576 U.S. at 172 ("In light of [its] underinclusiveness . . . . *the Sign Code* fails strict scrutiny); *Arkansas Writers' Project, Inc.*, 481 U.S. 232-34 (1987) (finding that the magazine tax scheme was "both overinclusive and underinclusive" and holding "*the tax* [was] therefore invalid under the First Amendment"); *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 190 (1999) (citations omitted) (holding that the "*regulatory regime* [was] so pierced by exemptions and inconsistencies that the Government [could not] hope to exonerate it").

56. The Supreme Court has identified underinclusive sign ordinances as ones which function "through the combined operation of a general speech restriction and its exemptions." *Gilleo*, 512 U.S. at 51.

57. For example, *Metromedia* held that because "the ordinance contains exceptions that permit various kinds of noncommercial signs, whether on property where goods and services are offered or not, that would otherwise be within the general ban. . . . [t]here can be no question that a prohibition on the erection of billboards infringes freedom of speech." 453 U.S. 490, 514 (1981).

58. Tailoring defects in a speech code also give rise to two other related, but jurisprudentially distinct infirmities. First, the Supreme Court points out that "the exemptions in [such] ordinance[s] . . . shed light on the separate question whether the ordinance prohibits too much speech." *Id.* at 52. And second, by embedding exemptions within a speech code the government "diminish[es] the credibility of the [its] rationale for restricting speech in the first place" and, therefore, calls into question the asserted governmental interest(s) in restricting protected expression. *Id.* (citation omitted).

**B. Standing to challenge an ordinance restricting speech.**

59. To have standing to challenge an ordinance restricting protected speech, a speaker "must show (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *Fed. Election Comm'n v. Cruz*, 212 L. Ed. 2d 654, 142 S. Ct. 1638, 1646 (2022) (citation omitted).

60. The essence of an Article III injury is the "invasion of a legally protected interest." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

61. The First Amendment to the U.S. Constitution establishes a legally protected interest in the right to free speech.

62. The Supreme Court has developed doctrinal tests to specify when a restriction on speech invades the free speech interests secured by the First Amendment.

63. The Supreme Court holds that free speech is "among the *fundamental personal* rights . . . protected by the Fourteenth Amendment from *invasion by state action*" and "[i]t is also well settled that municipal ordinances adopted under state authority *constitute state action* and are within the prohibition of the amendment." *Lovell v. City of Griffin, Ga.*, 303 U.S. 444, 450 (1938) (citations omitted) (emphasis added).

64. "Governmental activity constitutes an injury-in-fact when 'the challenged exercise of governmental power is regulatory, proscriptive, or compulsory in nature, and the complainant is either presently or prospectively subject to the regulations, proscriptions, or compulsions that he is challenging.'" *Speech First, Inc. v. Schlissel*, 939 F.3d 756 at 764–65 (quoting *Laird v. Tatum*, 408 U.S. 1, 11 (1972)) (cleaned up).

65. A speaker who is subject to an unconstitutional regulation of speech sustains an Article III injury that is "traceable to the operation of [the law] itself." *Cruz*, 142 S. Ct. at 1649.

66. A speaker may redress its injury by requesting the ordinance be declared unconstitutional, enjoined, and/or by seeking an award of damages. *See*

15

*e.g.*, *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021) (holding that even "nominal damages satisfies the redressability element of standing").

### C. The constitutionality of laws restricting speech are tested on their face.

67. The availability of a facial challenge turns on the applicable substantive constitutional tests necessary to evaluate the constitutionality of the challenged law.

68. "[A] plaintiff bringing a facial challenge must establish that no set of circumstances exists under which the law would be valid." *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)) (cleaned up).

69. A content-based speech code "can stand *only* if [it] survive[s] strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 576 U.S. at 171 (cleaned up) (emphasis added).

70. In parallel, "[content-neutral] restrictions . . . are valid *provided* that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest." *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293, 104 S. Ct. 3065, 3069, 82 L. Ed. 2d 221 (1984) (emphasis added).

71. Because there are "no set of circumstances" where a municipal sign ordinance that fails review under strict or intermediate scrutiny "would be valid,"

the ordinance is subject to a facial challenge by a speaker whose speech is regulated under the scheme. *Compare id., with AFPF*, 141 S. Ct. at 2387.

## II.  PSM's free speech rights.

72.  Billboard advertising is a form of speech protected under the First and Fourteenth Amendments to the U.S. Constitution.

73.  Under the First Amendment, PSM has the right to have its speech be regulated under a constitutionally valid rule of law.

74.  In *Metromedia, Inc. v. City of San Diego*, the Supreme Court explained that "[t]he outdoor sign or symbol is a venerable medium for expressing political, social and commercial ideas. From the poster or 'broadside' to the billboard, outdoor signs have played a prominent role throughout American history, rallying support for political and social causes." 453 U.S. 490, 501 (1981) (cleaned up).

75.  PSM satisfies all requirements for approval from the Michigan Department of Transportation under Michigan's Highway Advertising Act, M.C.L. § 252.301, et seq., for the erection of a billboard at its proposed location in Macomb.

## COUNT I
## 42 U.S.C. § 1983 DEPRIVATION OF
## CIVIL RIGHTS UNDER COLOR OF STATE LAW —
## UNCONSTITUTIONAL CONTENT-BASED SPEECH CODE

76.  PSM incorporates by reference paragraphs 1-75 above.

77. Under the First Amendment to the U.S. Constitution, PSM possesses a legally protected interest in its right to be free from the unconstitutional regulation of its speech.

78. The Sign Ordinance is facially unconstitutional under the First and Fourteenth Amendments to the U.S. Constitution because it constitutes an unconstitutional content-based regulation of speech.

79. The Sign Ordinance is facially content based because it "draws distinctions based on the message a speaker conveys." *Reed*, 576 U.S. at 163.

80. In particular, the restrictions that purport to regulate PSM's speech as set forth in Section 20-8 are facially content based because the Sign Ordinance distinguishes (and prohibits) the off-premises speech PSM desires to engage in, while allowing signs that displays other specific off-premises messages favored by the Township.

81. Under the First and Fourteenth Amendment, any attempt by Macomb to regulate or restrict PSM's display of its signs through the use of content-based regulations must advance a compelling government interest and be narrowly tailored to achieve that interest.

82. Macomb's content-based Sign Ordinance is facially unconstitutional because it lacks a compelling government interest in distinguishing its regulation of signage in the Township based on the message displayed on the sign.

83. And the Sign Ordinance, on its face, is not narrowly tailored to advance any compelling governmental interest.

84. First, the Sign Ordinance is not narrowly tailored because it contains a blanket prohibition on the display of signs that display off-premises speech, but then goes on to exempt favored categories of speech from this prohibition.

85. Second, the Sign Ordinance is not narrowly tailored because it prohibits too much speech.

86. PSM has suffered and will continue to suffer financial and other harm because of the Sign Ordinance, including the actual and threatened enforcement thereof, its inability to erect and use its proposed billboard, and to erect future billboards, in Macomb.

WHEREFORE, Plaintiff PSM prays for judgment against Macomb granting PSM injunctive and declaratory relief and awarding it damages in an amount to be determined at trial, together with attorney fees and other fees authorized by 42 U.S.C. § 1988, plus costs and interest, along with any other further relief the Court may deem just, proper, and equitable.

                                              Respectfully submitted,

                                              By:/s/Donald R. Sheff II
                                                   Donald R. Sheff II (P78262)
                                              General Counsel
                                              PRIME-SITE MEDIA, LLC
                                              Attorney for Plaintiff
                                              220 South Main Street
                                              Royal Oak, Michigan 48067
                                              248-289-5895
                                              dsheff@primesitellc.com

Date: May 5, 2023