## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Prime-Site Media, LLC,

      Plaintiff,

v.

Township of Macomb,

      Defendant.

Case No. 23-cv-11075

Hon. Matthew F. Leitman

## CONSENT JUDGMENT

Upon the stipulation and consent of the parties hereto, and by their respective counsel, the Court finds as follows:

A.    Plaintiff Prime-Site Media, LLC ("PSM" or "Plaintiff") is a Michigan limited liability company. On March 29, 2023, PSM submitted a sign permit application to Macomb for the purpose of erecting a digital billboard at a parcel of real property adjacent to Highway M-59 identified by Parcel/Tax Identification No. 20-08-36-353-023 (the "Site").

B.    Defendant Township of Macomb ("Macomb" or "Defendant") is a Michigan municipal corporation organized under the laws of Michigan and located in Macomb County, Michigan.

C.     All of the parties hereto are sometimes referred to individually as a "Party," and collectively as the "Parties."

D.     On May 5, 2023, Plaintiff filed a Complaint in the above-captioned action alleging, among other things, the violation of the First and Fourteenth Amendment of the United States Constitution, deprivation of its civil rights under color of state law, including the right to free speech, and seeking injunctive, declaratory, and monetary relief.

E.     On June 20, 2023, Defendant filed its Answer to the Complaint. Defendant denies all claims asserted in Plaintiff's Complaint and asserted multiple affirmative defenses.

F.     The Parties have engaged in settlement discussions and have agreed upon a resolution of their disputed claims without any admission of liability and they stipulate to the entry by the Court of this Consent Judgment and agree to be bound by its terms.

BY CONSENT OF THE PARTIES, IT IS HEREBY ORDERED AND ADJUDGED AS FOLLOWS:

1.     Plaintiff shall be entitled and permitted to construct, operate, and maintain a sign located at the Site ("Sign A") in the Township of Macomb. Defendant will issue to Plaintiff all permits and approvals necessary for Plaintiff to construct, operate, relocate, replace, and maintain the Sign consistent with and

subject to the terms of this Consent Judgment. The approvals identified in the previous sentence include, but are not limited to, Macomb's execution of **Exhibit A**.

2.     Plaintiff may apply for a second sign ("Sign B") in Macomb Township which shall be located on a parcel adjacent to Highway M-59.  The specific location of Sign B shall comply with regulations regarding billboard locations established by the Macomb Township Sign Ordinance (attached as **Exhibit C**). The approval of a second sign location shall be on a first come, first served basis. By virtue of this Consent Judgment, plaintiff shall not obtain priority over any other applicant for a billboard that otherwise meets requirements of the Township's sign ordinance.

3.     The Signs shall have two (2) ten feet (10') by thirty-six feet (36') display faces that consist of static or LED digital displays, with either configuration having with a maximum twenty feet (20') vee (the display faces spread apart at the ends furthest from the road). The top of Sign A's display faces shall be no more than thirty-five feet (35') high above existing grade. Sign A's location at the Site shall conform with the site plan attached as **Exhibit B**. Future development of the parcels where the Signs are located shall not be conditioned on the removal or alteration of the Signs. At its option, PSM may in the future remove the cross-read display face (the display face facing eastbound M-59 traffic) on either of the Sign. The Sign may display any messages or copy that are of a commercial or non-commercial nature except that Plaintiff shall not utilize the Sign for the advertisement of alcoholic

beverages containing twenty one percent (21%) or more alcohol, tobacco, marihuana and/or cannabis, or sexually oriented business. The Sign shall be supported by one vertical structural column with such vertical structural column system to be consistent with the requirements of Section 20-8.A.14 of the Macomb Township Sign Ordinance and approved by Macomb Township. Approval of the structural design of the structural column shall not be unreasonably withheld. The LED digital displays shall utilize automated light dimming and light mitigation technology so that the display is not as bright at night as during the day and the LED viewing angles are reduced to approximately sixty (60) degrees.

4.    Plaintiff will construct and erect the Signs in accordance with signed architectural drawings from a licensed engineer which shall fully comply with this Consent Judgment.

5.    Subject to Paragraph 10 of this Consent Judgment, the Plaintiff shall comply with all legally enforceable building codes, electric codes, and safety codes.

6.    The Signs shall comply with all applicable provisions of the Michigan Highway Advertising Act of 1972, as amended, and all applicable digital sign permit requirements of the Michigan Department of Transportation.

7.    If in the event that PSM is unable to obtain Michigan Department of Transportation digital sign permit(s) for Sign A at the location proposed in this Consent Judgment after making its best commercially reasonable efforts to do so,

Macomb Township agrees to allow PSM to relocate Sign A to a mutually agreeable location adjacent to M-59 (the "Fallback Location"). The Site for Sign A contemplated by Paragraph 3 of this Consent Judgment is nonconforming with the Macomb Township Sign Ordinance (attached as **Exhibit C**) in the following respect: i) Sign A is not located in a C-4 zoned parcel; ii) Sign A exceeds the setback requirement by five feet; iii) Sign A is located within 400 feet of a residentially zoned property; iv) Sign A exceeds the height requirement by 10 feet but shall be no more than thirty-five feet (35') high above existing grade; v) Sign A's display time for a digital advertisement is projected to change every 8 seconds in compliance with the Michigan Highway Advertising Act; and vi) Sign A is located closer than 2,250 feet to another Billboard or off-premises signage. If Sign A is relocated to the Fallback Location, Sign A may continue to be nonconforming with respect to criteria i., ii., iii., v., and vi. specified above in this Paragraph, but will otherwise comply with all other applicable provisions of the Macomb Township Sign Ordinance that it would have been required to comply with at the original Site.

8.      When PSM obtains digital sign permits for Sign A (either at the Site or the Fallback Location), Macomb Township shall be entitled to advertising space on the Sign to display public service, community events, or public safety messages, at no cost to the Township, for a total of four (4) guaranteed weeks annually in accord with the terms of this paragraph. Macomb shall provide PSM forty-five (45) days

advance written notice indicating the dates it intends to utilize the guaranteed advertising space contemplated in the preceding sentence. All creative and production work normally associated with development of the presentation of a digital display advertisement or message shall be provided by Macomb Township. The time for display for Macomb Township's rotating message slot shall be no less than eight (8) seconds every minute per message. PSM shall provide up to four (4) hours of educational assistance to Macomb Township pertaining to creating advertising copy to display on the Sign. In addition to the guaranteed advertising space contemplated by this paragraph, Macomb Township shall be entitled to digital advertising space, on a space-available basis, on one digital advertising rotation on the Sign for the remainder of the calendar year. The Parties shall work together cooperatively to effectuate and administer the provisions of this paragraph. If in the event PSM is unable to obtain MDOT digital permits for Sign A and only possesses the MDOT permitting necessary to display a static sign, then the advertising space Macomb Township shall be entitled to under this Paragraph is one static message on Sign A for four (4) guaranteed weeks annually.

9.    Subject to the terms and provisions of this Consent Judgment and except in the event of any claim by either Party to enforce the terms of this Consent Judgment, the Parties, including their trustees, officials, officers, members, employees, agents, attorneys, and independent contractors fully, completely,

unconditionally and forever release and discharge each other from any and all claims, liabilities, controversies, attorney fees, agreements, demands, damages and causes of action of any nature whatsoever, in law or equity, whether known or unknown, contingent or absolute, that the Parties, now have, have ever had or may in the future have against each other arising from any act, omission, conduct, matter, or circumstances that occurred at any time up to the date of this Consent Judgment, that arise from, or relate in any way to, the placement of a sign at the Site, including, but not limited to, any claims which were (or could have been) asserted in the litigation or any other lawsuit or other legal or administrative proceedings, or could have been brought by either Party under any federal, state or local law or regulation, including for all claims and damages, costs, expenses, compensation, benefits, attorney fees, or any claim under common law, constitutional law, or any legal theory whatsoever. The Parties agree that neither Party is a prevailing party for purposes of any fee shifting statute or rule.

10.     If there is any conflict between Macomb's Code or Ordinances, this Consent Judgment shall control.

11.     The Parties acknowledge that they are not executing this Consent Judgment in reliance on any promise, representation, or warranty not contained in this Consent Judgment and that this Consent Judgment constitutes the entire agreement of the Parties with respect to the matters addressed herein, supersedes all

prior agreements and understandings of the parties with respect to such subject matter herein.

12.     This Consent Judgment may only be modified, amended or changed in any manner by the written agreement of the Parties signed by their authorized representatives and by further order of this Court incorporating the Parties' agreed upon modifications. Either Party may request that the other approve a modification of this Consent Judgment, but neither Party shall be required to approve same.

13.     This Consent Judgment shall apply to and be binding upon Plaintiff and Defendant and their respective successors, transferees, and assigns.

14.     The Parties agree by entering this Consent Judgment that the terms and conditions herein are reasonable, adequately resolve the issues covered by this Consent Judgment, and protect the public interests and interests of the Parties.

15.     This Court retains jurisdiction only to enforce or interpret the terms of this Consent Judgment.

IT IS SO ORDERED.

      s/Matthew F. Leitman
      Hon. Matthew F. Leitman
      United States District Court Judge
Dated:  10/2/2023

[Parties' Consent on Following Page]

For Plaintiff Prime-Site Media, LLC:


/s/ *Donald R. Sheff II*
Donald R. Sheff II (P78262)
General Counsel
PRIME-SITE MEDIA, LLC
Attorney for Plaintiff
220 South Main Street
Royal Oak, Michigan 48067
248-289-5895
Email: dsheff@primesitellc.com



Dated: October 2, 2023

Prime-Site Media, LLC, a Michigan
limited liability company

By: Jay C. Carll
Its:

Dated:  October 2, 2023

For Defendant Township of Macomb:

**TOWNSHIP OF MACOMB**

By: Frank Viviano

Its:  Supervisor

By:  Kristi L. Pozzi

It's Clerk

Dated: October 2, 2023

As approved at the Macomb Township Board of Trustees Meeting held on
September 27, 2023.


/s/ *James E. Tamm*
James E. Tamm (P38154)
KERR, RUSSELL AND WEBER, PLC
Attorney for Defendant
500 Woodward Avenue, Suite 2500
Detroit, MI 48226-3427
T: 313-961-0200; F: (313) 961-0388
jtamm@kerr-russell.com

Dated:  October 2, 2023


/s/  *Benjamin J. Aloia*
Benjamin J. Aloia (P54439)
ALOIA LAW
Attorney for Defendant
48 S. Main Street, Ste. 3
Mount Clemens, MI 48043
T: 586-783-3300; F: (586) 783-3313
aloia@aloia.law

Dated: October 2, 2023

# EXHIBIT A

## ZONING CERTIFICATION

I, _____, am the _____ for the

Township of Macomb.

Among the duties of which the Township is charged, is the responsibility of recording,

keeping and safeguarding the zoning ordinance and zoning maps.

I have searched my records and have found that the property abutting Highway M-59

located _____ is currently zoned

_____. A copy of the zoning map for this area is on file at this office.

I do hereby certify that the enclosed map is a copy of the current zoning map pertaining

to the land abutting the highway located at the above-mentioned location. I have compared the

same with the official zoning map on record in this office and certify that it is an accurate copy.

This zoning is defined as _____. This

definition allows for billboards to be erected at this location pursuant to such consent judgment

between the applicant and Macomb Township. I further certify that this property has not been re-

zoned for the purpose of outdoor advertising.


**I hereby certify that the above information is true.**


Signed_____Dated_____

# EXHIBIT B



10'-0" SETBACK

124.01

428.44

08-36-353-035

0.47

74.01

UNDERGROUND UTILITIES

08-36-353-018

08-36-353-034

0.32

280

90

# EXHIBIT C

Chapter 20 - SIGNS AND SIGN REGULATIONS

Sec. 20-1. - Short title.
     This chapter shall be known and cited as the Macomb Township Sign Ordinance.

Sec. 20-2. - Purpose.
     The purpose of this chapter is to regulate the size, location, construction and manner of display of signs in order to minimize their harmful effects and protect the public health, safety, welfare, and aesthetic beauty of the Township. Unrestricted signage does not benefit individual businesses or property owners, or the community as a whole, because a proliferation of signs in the township would unduly distract motorists and pedestrians: create traffic hazards: harm the township's appearance: contribute to blight: negatively impact property values; and reduce the effectiveness of signs needed to direct and warn the public. Reasonable regulation of signs is necessary to minimize hazards and distractions for motorists and pedestrians, and to preserve the township's character and appearance. The provisions of this chapter shall be considered to be the minimum necessary to promote and protect the public health, safety, comfort, morals, convenience, and aesthetic beauty of the Township.
     The following municipal interests are considered by the Township to be compelling government interests. Each interest is intended to be achieved under this Article in a manner that represents the least restrictive means of accomplishing the stated interest, and in all events is intended to promote an important government interest that would not be effectively achieved absent the regulations in this Article. Regulating the location, size, construction, and manner of display of signage in the most narrowly tailored manner represents the least restrictive means of addressing the targeted government interests of avoiding unsafe and nuisance-like conditions while maintaining and improving pedestrian and vehicular safety and efficiency; character and quality of life; economic development and property values; property identification for emergency response and wayfinding purposes; and unique character of areas of the Township.

1. Public Safety. Maintaining pedestrian and vehicular safety are predominant and compelling government interests throughout the Township, with particular emphasis on the safety of pedestrians. The safety path and sidewalk network provides facilities for pedestrians situated between vehicular roads and private properties throughout the Township in areas of the Township without sidewalks or safety paths, pedestrians typically travel along the edge of the roadways.

   Since most signage on the private properties is intended and designed to attract the attention of operators of motor vehicles, thereby creating distractions that can jeopardize traffic and pedestrian safety, this ordinance is intended to regulate signs so as to reduce such distractions and, in turn, reduce the risk of crashes, property damage, injuries, and fatalities, particularly considering the rate of speed at which the vehicles are traveling in the districts identified in this chapter.

   This chapter is also intended to protect public safety by requiring signs that are poorly maintained and/or structurally unsafe to be repaired or removed to protect against fallen signs or deteriorating sign debris from entering improved roadways, sidewalks and safety paths and causing dangerous conditions for vehicular traffic and pedestrians.

   a. The Township encourages signage that will inform motorists and pedestrians of their desired destinations without conflicting with other structures and improvements. These interests are

1

legitimately supported by limiting the maximum size of signage, providing setbacks, and specifying minimum-sized characters for efficient perception by motorists and pedestrians, while minimizing distractions that could put pedestrians at risk.

b.  In some circumstances, adjusting the size, setback, and other regulations applicable to signage may be important to avoid confusion and promote clarity where vehicular speeds vary on commercial/business thoroughfares.

c.  In multi-tenant buildings and centers, it is compelling and important to provide distinct treatment with a gradation of regulation for individual identification depending on base sign size, amount of road frontage, and the like, all intending to provide clarity to alleviate confusion and thus additional traffic maneuvers, provide a minimum size of characters to allow identification, and maintain maximum-sized overall signage to prevent line-of-sight issues.

d.  Maximum size and minimum setback of signage is compelling and important to maintain clear views for both traffic and pedestrian purposes.

2.  Character and Quality of Life. Achieving and maintaining attractive, orderly, and desirable places to conduct business, celebrate civic events, entertain people, and provide for housing opportunities is directly related to the stability of property values needed to provide and finance quality public services and facilities within the Township. This chapter intends to allow signs that are of sufficient, but not excessive, size to perform their intended function as necessary to provide and maintain the Township's character and support neighborhood stability. Signs that contribute to the visual clutter, contribute to the potential conflict between vehicular and pedestrian traffic, and distract from scenic resources and views, will be prohibited in efforts to preserve the character, aesthetic qualities and unique experience within the Township. It is also the intent of this chapter that signs will reflect the character of unique districts as may be established by the Township's Master Plan, other adopted plans, or this chapter and other parts of the zoning ordinance.

3.  Economic Development and Property Values. The establishment of the restrictions in this chapter has a direct relationship to creating stability and predictability, allowing each private interest to secure reasonable exposure of signage, and thus promoting business success. The application of the restrictions in this chapter allows businesses to reasonably command attention to the content and substance of their messages while concurrently allowing the promotion of other visual assets, including (without limitation) landscaping and architecture, all of which contribute to economic development and property value enhancement.

4.  Avoidance of Nuisance-Like Conditions. Due to the concentration of people and activities, there is a potential for, and it is a compelling interest to avoid, blight, physical clutter, and visual clutter in the Township. The result of these conditions leads to diminished property values, reduced attractiveness of the community, and reduced quality of life within the districts. Minimum regulations that substantially relate to signage are important and necessary for the maintenance and well-being of positive conditions, good character and quality of life in the Township. Ultimately, these regulations are compelling and important for the protection of all police power values.

a.  An excessive number of signs in one location creates visual blight and clutter, as well as

2

confusion of the public. Thus, limiting the number of signs on properties, establishing setbacks from property lines, and requiring reasonable spacing between signs are compelling interests that can be directed with minimum regulation.

b. Signs that are too large can lead to confusion, undermine the purposes of the signs, and ultimately lead to physical and visual clutter. Establishing maximum sizes can be the subject of clear and effective regulations that address this compelling and important interest.

c. Requiring maintenance specifications for signs can minimize the creation of blight and clutter due to the deterioration of signs that are not durable or otherwise well-constructed, and such regulations would be consistent with construction codes for other structures

d. There is a compelling governmental interest that signs avoid glare, light trespass, safety, and skyglow. The selection of proper fixture type(s) and location, use of supportive lighting technology, and control of light levels in a reasonable fashion is consistent with regulations that are narrowly tailored to achieve the Township's interests.

5. Property Identification for Emergency Response and Wayfinding Purposes. Locating a business or residence by police, fire, and other emergency responders can be a matter of life and death, and thus it is a compelling interest to ensure that proper, understandable, unambiguous, and coordinated signage be permitted and required, and specifications for such purposes can be accomplished in a simple and narrow manner. Wayfinding for vehicular and pedestrian purposes is also a compelling interest to avoid confusion in public rights-of-way, and unnecessary intrusions on private property. Sign specifications for such wayfinding can be coordinated with property identification for such emergency and other purposes.

6. Maintaining Unique Character of Areas of the Township. Acknowledge the unique character of certain areas and districts, and establish special time, place and manner regulations that reflect the unique aesthetic, historical, and/or cultural characteristics of these areas/districts.

7. Protection of the Right to Receive and Convey Messages. The important governmental interests and regulations contained in this chapter are not intended to target the content of messages to be displayed on signs, but instead seek to achieve non-speech objectives. In no respect do the regulations of signage prohibit a property owner or occupant from an effective means of conveying the desired message. Nothing in this chapter is intended to prohibit the right to convey and receive messages, specifically noncommercial messages such as religious, political, economic, social, philosophical or other types of speech protected by the First Amendment of the United States Constitution.

Sec. 20-3. - General standards.

The following general standards shall apply to signs in all zoning districts:

A. *Standards of measurement.* Dimensional standards and measurements for signs shall be subject to the following (see illustration):

3

1. *Sign area.* The surface area of a sign shall be measured and defined by the area of a rectangular or circular figure that encloses the extreme limits of individual letters, words, symbols or message of the sign together with any frame. When a sign consists of an irregular shape, exclusive from a rectangle or circle, it shall be evaluated with a rectangular or circular frame surrounding the outside extents of the sign. The areas for signs consisting of lettering, symbols or figures without a distinguishing frame or border shall be evaluated as a single sign in the same manner with a calculated frame surrounding the outside extents of all lettering, symbols or figures.

    a. Where two (2) sign faces with identical sign areas are placed back to back within two (2) feet of one another, then the sign area shall equal the area of one (1) face.

    b. Where two (2) sign faces with different sign areas are placed back to back within two (2) feet of one another, then the sign area shall equal the area of the larger face.

    c. Where two (2) or more sign faces are placed more than two (2) feet from one another at any point, then the sign area shall equal the total area of all sign faces.

2. *Sign height.* The distance from the average finished grade of the ground or pavement directly below the sign to the highest point of the sign structure, including any supportive or decorative elements (see illustration).

3. *Sign setback.* Front and street setbacks shall be measured from the road right-of-way, as shown on the Master Thoroughfare Plan, of the property on which the sign is located to the leading edge of the subject sign.

4. *Allowable Sign area.* The allowable sign area of a building shall be based on the "principal building frontage" (PBF) as defined herein (see illustration).

    a. *Multiple uses.* Where more than one (1) business or use occupies space within a building, the total signable area allowed for the building shall be divided among the businesses or uses in proportion to the "building frontage" for the use in question as described in the building elevation as submitted with the approved site plan for the subject parcel.

    b. *Corner parcels.* Where a building has two (2) or more street level facades (such as on a corner lot), the non-principal building frontage shall receive building-mounted signage pursuant to Section 20-6.A.

B. *Construction and maintenance.* All signs shall be constructed or installed in compliance with the Michigan building, fire, and electrical codes enforced by the township; shall be maintained in good repair and working order; and shall present a neat and orderly appearance. Non- galvanized or corrosion-prone materials shall be painted as necessary to prevent corrosion. All sign faces shall be smooth, and no nails, tacks or wires shall be permitted to protrude from any sign. This shall not exclude the use of block letters, decorative elements or other devices that may extend over the top or in front of the sign structure.

C. *Placement requirements.*

1. No sign may extend above any parapet or be placed upon any roof surface. For purposes of this chapter, roof surfaces constructed at an angle of seventy-five (75) degrees or more from horizontal (such as mansard roofs) shall be regarded as wall space.

2. No sign attached to a building, other than a permitted awning or projecting sign, may project more than one (1) foot from the building wall.

3. Signs shall not be located within nor extend over any street right-of-way or corner clearance area, except where specifically authorized by this chapter. This restriction shall include any future planned rights-of-way identified in the master transportation plans for the township, county or state road authorities.

4

D. *Hazards and obstructions.* Signs shall not be designed or maintained in a manner that would confuse or mislead motorists or pedestrians, create traffic or pedestrian hazards, obstruct free and clear vision or interfere with any traffic control device. No sign shall be erected or maintained so as to prevent ingress or egress from any door, window or fire escape. No sign of any kind shall be attached to a standpipe, fire escape or other means of ingress or egress. All signs shall be located at least ten (10) feet from any utility pole, overhead wire, transformer or streetlight. The building official may waive this requirement upon determination that no good purpose would be served by the required setback.

E. *Use.* Signs shall not impair the use of adjacent properties. All signs shall be accessory to the principal use of the lot where the sign is located, unless specifically permitted by this chapter as a non-accessory sign. Any sign permitted by this chapter may contain a non-commercial message. A changeable copy area shall be allowed as part of a permitted sign, provided that the changeable copy area shall not exceed twenty (20) square feet of the total sign area.

F. *Sign Illumination.*

1. General Standards.

   a. No sign shall be illuminated by other than electrical or solar means.

   b. The source of illumination may be internal or external and meet standards of the State Electrical Code except for lighting that is integral for the use of electronic message signs, which are regulated in this Chapter.

   c. All external lighting fixtures used to illuminate a sign shall be shielded to direct light towards the sign.

   d. No sign, whether externally or internally illuminated, shall display a brightness of such intensity or brilliance that impairs the vision or endangers the safety and welfare of any pedestrian, cyclist or operator of a motor vehicle or negatively impacts an adjacent property.

2. Sign Illumination Standards - The illumination of all signs, including Electronic Message Signs (EMS), shall not exceed 0.3 footcandles above ambient light levels based upon illumination measurement criteria set forth in Table 20-3 and Section 20-3.3.

| Table 20-3 Sign Area Versus Measurement Distance | |
| --- | --- |
| Area of Sign Sq. ft. | Measurement Distance (ft.) |
| 10 | 32 |
| 15 | 39 |
| 20 | 45 |
| 25 | 50 |
| 30 | 55 |
| 35 | 59 |
| 40 | 63 |
| 45 | 67 |
| 50 | 71 |
| *For signs with an area in square feet other than those specifically listed in this table (e.g., 12 sq. ft., 300 sq. ft., etc.), the measurement distance may be calculated with the following Formula: Measurement Distance = Area of Sign Sq. Ft. x 100 | |

3. EMS Illumination Measurement Criteria - The illuminance of a sign shall be measured with an illuminance meter set to measure footcandles accurate to at least two decimals. Illuminance of an EMS shall be measured with the EMS off, and again with the EMS displaying a white image for a full color-capable EMS, or a solid message for a single-color EMS. All measurements shall be taken as close as practical to a perpendicular plane of the sign at the distance determined by the total square footage of the sign as set forth in Table 20-3.

G. *Definitions:*

*Sign:* Any device, fixture, placard, painted wall, outline tube lighting of a window, use of parked vehicle or structure that uses any color, form, graphic, illumination, symbol, or writing to communicate information of any kind to the public.

*Specific sign definitions:* For purpose of this chapter, the following signs as listed shall be defined as follows:

1. *A-frame sign*. A sign not permanently anchored to the ground and constructed in a manner, and of such materials, which permit it to be repositioned by an individual without mechanical aid. Often referred to as a sandwich board sign or a sidewalk sign.

2. *Abandoned sign.* A sign associated with a use or building that has been discontinued or terminated.

3. *Animated, flashing, or moving sign.* A sign or display manifesting either kinetic or illusionary motion by natural, mechanical or electrical means as either a component or the total message portrayed.

4. *Awning sign.* A sign that is painted on, printed on or attached flat against the surface of an awning (see Appendix).

5. *Balloon sign.* A sign in which one (1) or more balloons are used as a temporary sign or as a means of directing attention to any business, profession, commodity, service, product or entertainment.

6. *Banner sign.* Any sign of fabric or other non-rigid material with no enclosing fabric that is mounted to a pole or any structure by a frame at one (1) or more edges. Flags shall not be considered banners.

7. *Beacon sign.* Any light with one (1) or more beams directed into the atmosphere or directed at one (1) or more points not on the same zone lot as the light source; also, any light with one (1) or more beams that rotate or move.

8. *Billboard.* A sign structure advertising an establishment, merchandise, service or entertainment which is not sold, produced manufactured or furnished at the property on which the sign is located, also called "off-premises" or "outdoor advertising" signs.

9. *Building frontage.* The horizontal width of the building or tenant space on the side parallel to the street, or streets, if contiguous. Measurements shall only include the distance from one (1) permanent exterior wall to the opposite permanent exterior wall.

10. *Building frontage, principal (PBF).* The width of the building on the side where the primary entrance to the business is located, which may or may not front a street. The building official may designate an alternate horizontal building width as the principal building frontage for sign purposes.

11. *Canopy sign.* A sign that is painted on, printed on or attached to a canopy which is affixed to a building wall or to the ground by columns or posts. See illustration.

12. *Changeable copy sign*. A sign or portion thereof with characters, letters, or illustrations that can be changed or rearranged manually without altering the face or the surface of the sign. A sign on which the message changes through the use of electronic means shall not be

6

considered to be a changeable copy sign under the terms of this chapter. See definitions of animated, flashing, or moving sign and electronic message sign.

13. Clear Vision.

14. *Directional sign.* An incidental sign that assists drivers or pedestrians to specific locations within an individual parcel. Any commercial message included as part of a directional sign shall count toward the maximum permitted sign area.

15. *Double-faced sign.* A sign with two (2) faces, back-to-back.

16. *Dynamic Frame Effect.* An effect used on Electronic Message Signs in which the illusion of motion and/or animation is used. Often called *Scroll* or *Travel*.

17. *Electric sign.* A sign or sign structure in which electrical wiring, connections or fixtures are used.

18. *Electronic message sign (EMS).* Any sign that uses changing lights to form a sign message or messages wherein the sequence of message and the rate of change is electronically programmed and can be modified by electronic processes.

19. *Festoon sign.* A sign consisting of ribbons, tinsel, small flags, pinwheels, garland or other material hanging or draped.

20. *Flag.* Any fabric, banner, or bunting containing distinctive colors, patterns or symbols, provided that such a flag shall not exceed sixty (60) square feet in area and shall not be flown from a pole the top of which is more than forty (40) feet in height. Any flag not meeting any one (1) or more of these conditions shall be considered a banner sign and shall be subject to regulation as such.

21. *Freestanding sign.* A sign that is erected upon or supported by the ground and is affixed to the ground, but not attached to any building, including signs on poles or pylons that are anchored into the ground. Also called ground or monument signs.

22. *Government sign.* Any temporary or permanent sign erected and maintained by the township, school district, county, state or federal government for traffic direction or for designation of or direction to any school, hospital, historical site, public service, public property, facility or function.

23. *Illuminated sign.* A sign with an artificial light source incorporated internally or externally for the purpose of illuminating the sign.

24. *Marquee sign.* A sign attached to or supported by a marquee structure.

25. *Multiple-faced sign.* A sign containing three (3) or more faces, not necessarily back-to-back.

26. *Multi-tenant sign.* The term Multi-Tenant Sign shall mean an exclusively informational listing the uses of the property attached to the exterior wall at the entrances of a building or entry to a subdivision or condominium and used for the purpose of displaying the names and unit identifications of occupants engaged in professions or businesses on the premises.

27. *Mural.* A picture painted directly on a wall.

28. *Outline tubing sign.* A sign consisting of glass or similar material tubing filled with a gas such as neon, or light-emitting diode (LED) which glows when electric current is sent through the tubing.

29. *Painted wall sign.* A sign which is applied with paint or similar substance on the surface of an exterior wall.

30. *Parked vehicle sign.* Any sign attached to or upon any unlicensed vehicle where said vehicle is allowed to remain parked in the same location, or in the same vicinity, for frequent or

extended periods of time, where the intent is apparent to be one of using the vehicle and signs for purposes of communicating a message.

31. *Pennant sign.* Any lightweight plastic, fabric, or other material, whether or not containing a message of any kind, suspended from a rope, wire, or string, usually in series, designed to move in the wind.

32. *Portable sign.* Any sign not permanently attached to the ground or other permanent structure, or a sign designed to be transported by means of wheels; signs converted to A-or T-frames; menu and sandwich board signs; balloons used as a sign; umbrellas used for advertising; and signs attached to or painted on vehicles parked and visible from the public right-of-way, unless said vehicle is used in the normal day-to-day operations of the business.

33. *Projecting sign.* Sign that is affixed to any building or part thereof or to any structure and projects out by more than twelve (12) inches. Also called a blade sign.

34. *Roof sign.* Any sign erected over or on the roof of a building. See illustration.

35. *Snipe sign.* Any sign fastened to trees or poles anywhere in the township.

36. *Temporary sign.* A sign that is not intended to be permanent including portable signs, trailer signs, banners, pennants or any other sign that is not permanently affixed to a building face or window or to a pole, pylon or other support that is permanently anchored on the ground.

37. *Trailer sign.* A sign that is mounted on a frame with wheels and that is capable of being pulled by a vehicle or by hand. For the purposes of this chapter a trailer sign is considered to be a portable sign.

38. *Wall (building-mounted) sign.* A sign attached parallel to and extending not more than twelve (12) inches from the wall of a building with no copy on the sides or edges, including painted individual letter, cabinet and signs on a mansard, and signs mounted on an interior wall intended for viewing from the outside.

39. *Window sign.* A sign that is placed inside a window or upon the inside windowpanes or glass and is visible from the exterior of the window. See Illustration.

Sec. 20-4. - Signs allowed without a permit.

The following non-illuminated signs are exempt from section 20-12 (Sign permit) requirements, and shall be permitted accessory to a permitted use in any zoning district:

A. *Temporary signs.* Temporary signs shall be subject to the following:

1. The maximum permitted height and total sign area for a temporary sign, that shall be allowed without a permit shall not exceed the requirements of Table 20-4:

| Table 20-4<br>Maximum Area of Temporary Ground Signs | | |
|---|---|---|
| **Zoning District** | **Aggregate Maximum Sign Area for Total Amount of Signs Per Parcel** | **Maximum Sign Height for Each Sign** |
| Agricultural, all Single-Family Residential areas including Mobile Home Parks | 12 square feet | 6 feet |
| Residential Multiple-Family, office, commercial or industrial areas. | 12 square feet | 6 feet |

2. Such signs shall be removed by the property or business owner, agent or person responsible for creating or placing the sign on the lot within five (5) calendar days following completion or

discontinuation of the event, action or activity to which the sign pertains,

But in no event shall such signs be displayed for a time greater than 75 days from when the sign was first displayed.

3. Such signs shall not be located closer than six (6) feet from any property line and street right-of-way as shown on the Master Thoroughfare Plan and outside of a clear vision zone, whichever is greater.

4. Such signs determined by the building official or their designee that are torn, damaged or are in an unsafe condition shall be immediately removed by the owner, agent or person responsible for creating or placing the sign on the lot.

5. Such signs shall be prohibited accessory to a home occupation.

6. The Township will impose an inspection fee based on current building department fee schedules.

B. *Address numbers and wallplate.* All principal buildings shall display their assigned street number in a manner legible from the street right-of-way. Address numbers may be illuminated in accordance with the standards of section 20-3 F (Illumination). In addition, one (1) non-illuminated wallplate not exceeding six (6) square feet in area shall be permitted per principal building wallplate and shall be attached flat against the building wall.

C. *Other signs and sign-related activities.* The following types of signs and sign-related activities shall be permitted accessory to a permitted use in the township:

1. Painting, servicing, cleaning or minor repairs to an existing sign, provided that the sign is restored to its original design and all work is in compliance with applicable structural and electrical codes, and the requirements for such signs specified in this chapter.

2. Memorial signs, tablets or markers cut into any masonry surface or constructed of bronze or other incombustible material.

3. Flags, including pennants installed by the township on or over public streets for aesthetic or promotional purposes.

4. Signs required to be maintained by law or governmental order, rule or regulation; signs identifying public access, municipal facilities and similar official markers.

5. Traffic safety and control signs that conform to the requirements of the Michigan Manual of Uniform Traffic Control Devices.

6. Changes to sign copy within an approved changeable copy area.

7. Call-box signs (such as drive-through restaurant menu boards) shall be regulated with respect to location on the parcel, lighting, and sound by Section 10.0350 of the Zoning Ordinance. The sign shall be deemed an incidental sign provided no individual item, letter, number, or symbol may be greater than six (6) inches in height. The sign shall not exceed six (6) feet in height.

Directional signs up to six (6) square feet in area, four (4) feet in height and meeting requirements of the Clear Vision Zone of Section 10-0313 of the zoning ordinance.

Sec. 20-5. - Permitted Temporary Signs

A. Permits Required. All permitted temporary signs, that are greater than twelve (12) square feet, except those signs where additional sign area is permitted during the time frame and conditions specified in this Section 20-5C, shall require a permit from the building official. Banners meeting the requirements of this section shall be considered temporary signs.

B. Temporary Ground Signs. The setback height and area of temporary ground signs are set forth in Table 20.5.

| Table 20.5 Maximum Size, Maximum Height, and Permitted Type of Temporary Signs | | | | |
|---|---|---|---|---|
| Use | Permitted | Maximum Area of | Maximum Area of | Maximum Height |
| | Types | All Temporary Signs Per Parcel | Any Individual Sign Per Parcel | (Freestanding) |
| | Freestanding | 12 square feet | 6 square feet | 6 feet |

| Single- and Two-Family Residential | Wall | 4 square feet | 2 square feet | |
|---|---|---|---|---|
| Multiple Family Residential | Freestanding | 32 square feet | 16 square feet | 6 feet |
| | Wall | 4 square feet | 2 square feet | |
| Non-Residential Uses in Residential district | Freestanding | 40 square feet | 20 square feet | 6 feet |
| | Wall | 40 square feet | 20 square feet | |
| Non-Residential Uses in all other districts | Freestanding | 64 square feet | 32 square feet | 6 feet |
| | Wall | 64 square feet | 32 square feet | |
| Per subsection 20-4, temporary signs under 12 square feet do not require a permit. | | | | |

C.  Standards for All Temporary Signs.

1. Temporary signs, including special events, wall and freestanding, shall be constructed of durable, all-weather materials and designed to remain in place and in good repair so long as they remain on display.

2. The maximum display time of temporary signs is 30 days unless additional time is granted under subsection 3 or 4 below. After this time expires, the sign shall be removed. Once the temporary sign is removed, there shall be a gap of at least thirty (30) days between display of a temporary sign on the same property.

3. Display of temporary banners and temporary signs mounted on buildings (temporary wall signs) shall be limited to a total of twenty-eight (28) days per calendar year. Such signs shall not be displayed for any continuous period greater than fourteen (14) days.

Sec. 20-6. - Building-mounted signs.

The intent of this section is to establish consistent and reasonable standards for the location, size and range of permitted types of signs located on buildings in the township. The following shall apply to all building-mounted signs accessory to nonresidential uses in any zoning district.

A.  *Building-mounted sign standards.*

| Table 20-6 Building-mounted Sign Standards | | | | |
|---|---|---|---|---|
| | Type of Permitted Signs | | | |
| | **Wall** | **Awning** | **Projecting** | **Window** |
| Permit Required? | yes | yes | yes | no |
| Internal or external illumination | External and internal | External | External and internal | Internal |
| Maximum number of | 1 | 1 | 2 | 1 |
| faces per sign | | | | |

| Minimum sign height above ground (feet) | 8.0 feet | 7.5 feet | 8.0 feet | none |
|---|---|---|---|---|
| Maximum permitted sign area of all signs (square feet) | • One (1) sq. ft. per each one (1) ft. of Principal Build Frontage (PBF) up to 150 feet[¹]. <br> • An additional 10 percent 0.10 square feet for each lineal feet of frontage in excess of 150 feet[¹]. <br> • An additional 50 percent for a frontage of 60 feet and less plus a right-of-way setback of 300 feet and greater <br> • Min. sq. ft. shall not be less than 32. | | | 25% of the street level window surface area. |

1. *Location.* All building-mounted signs shall be located entirely within the street level facade(s). Any building elevation with road frontage that is not considered (PBF), shall be allowed wall signage up to fifty (50) percent of the total sign area permitted for the (PBF). Any side building elevation without road frontage that abuts either a nonresidential use or nonresidential zoned parcel, shall be permitted wall signage with no more than twenty (20) percent of the total sign area permitted for the (PBF). For parcels with frontage on Hall Road (M-59), the side elevations without road frontage that abut a nonresidential use or nonresidential zoned parcel, shall be permitted wall signage with no more than fifty (50) percent of the total sign area permitted for the (PBF).

2. *Rear public entrance sign.* One (1) additional building-mounted sign not exceeding four (4) square feet in area shall be permitted at any rear public entrance, which shall not count toward the maximum sign area permitted under this section.

3. *Awning signs.* Awning signs shall be further subject to the following (see illustration):
   a. Such signs shall be restricted to the awning valance, a band of material hanging from the bottom edge of the awning.
   b. Such signs shall not exceed eight (8) inches in height and shall occupy a maximum of thirty-three (33) percent of the valance area.
   c. Signs proposed to project or overhang into a public right-of-way shall be prohibited in all zoning districts except the Traditional Neighborhood District. Encroachment agreements may also be required from state or county road authorities with jurisdiction over the street right-of-way.
   d. The sign area allocated to the awning counts against the maximum permitted sign area for the affected building frontage.

4. *Projecting sign.* Projecting signs shall be prohibited in all zoning districts except the TND zoning district. Projecting signs in the TND district shall be subject to the following conditions:
   a. Such signs shall be secured to the building by metal anchors, bolts, supports, rods or braces, and shall be pinned away from the wall at least six (6) inches.
   b. Such signs shall project from the wall at an angle of ninety (90) degrees.
   c. A maximum of one (1) projecting sign shall be permitted per use, with a maximum sign area of twenty (20) square feet per sign face.
   d. Encroachment agreements may also be required from state or county road authorities with jurisdiction over the street right-of-way.

5. *Electronic message boards.* Electronic message signs as defined herein shall be permitted as part of the total allowable sign area and shall be limited to no more than thirty-two (32) square feet. Electronic message signs shall be subject to the requirements in Section 20-9.A.

B. *Building-mounted sign in the TND district.* Sign projections into the street right-of-way or over a public sidewalk in the neighborhood center and core downtown zones of the TND district shall be permitted, subject to the following:

1. Wall signs in the neighborhood center and core downtown zones of the TND district may extend a maximum of one (1) foot.

2. Projecting signs may extend out from the building wall a maximum of four (4) feet or thirty-three (33) percent of the sidewalk width, whichever is less.

3. Awning signs may extend out from the building wall a maximum of eight (8) feet or seventy-five (75) percent of the sidewalk width, whichever is less.

4. Animated/electronic message boards including time/temperature signs are strictly prohibited in the TND district.

C. *Building-mounted signs in residential districts.* For those uses permitted as special land uses in the residential areas shall be limited to a maximum sign area of twelve (12) square feet or as approved by the Planning Commission.

Sec. 20-7. - Ground signs.

The intent of this section is to establish consistent and reasonable standards for the height, location and size of ground signs in the township.

The following shall apply to all ground signs located on parcels with non-residential uses in any zoning district [signs associated with residential uses are subject to the standards of Section 20-9.D.] (Signs allowed with a permit)]:

A. *General standards.*

1. No person shall erect, alter or relocate a ground sign, including any changes in sign copy, without first obtaining appropriate permits from the township.

2. Ground signs shall be prohibited within clear vision zone, as defined in section 10.0313 (Clear vision zone).

3. A maximum of two (2) sign faces shall be permitted per ground sign.

4. *Electronic message boards.* Electronic message signs as defined herein shall be permitted as part of the total allowable sign area shall be limited to no more than sixty (60) percent of the permitted sign area. Electronic message signs shall be subject to the requirements in this Chapter.

B. *Height, Setback, Area and Permissible Number of Signs*. In addition to the general requirements set forth in Section 20-7A., the following height, setback and permissible number of signs shall be as follows:

| Table 20-7 Ground Sign Standards | | | | |
|---|---|---|---|---|
| GROUND SIGN REGULATION & Permitted Modifiers | MAXIMUM SIGN HEIGHT[1,2] | MINIMUM SIGN SETBACK FROM THE RIGHT-OF-WAY | MAXIMUM SIGN AREA PER SIGN FACE | MAXIMUM NUMBER OF SIGNS PER PARCEL |
| | 7 feet | 10 feet | 40 square feet | 1 |
| Signs located in Residential or TND Districts | No change | No change | -8 square feet | No change |
| Sign located in the Community Facilities (CF), Office (O-1) or Local Business (C-1) District | No change | No change | -8 square feet | No change |
| Total lot frontage - • 300 feet or more of on one (1) major street right-of-way, or • 500 feet or more on two (2) or more major street rights-of-way | No change | No change | +20 square feet | +1 additional sign |
| Sign abuts a street right of way width of 120 feet or more | + 2 feet | No change | +24 square feet | No change |
| Lot is occupied by three (3) or more separate non-residential uses (i.e. shopping center, office building, etc. | No change | No change | +20 square feet | No change |
| TOTAL PERMITTED WITH MODIFIERS: | _____ feet | _____ feet | _____ square feet | _____ sign(s) |

[1]Sign height excludes allowance for a base with a maximum height of 18 inches.
[2]Signs that are taller than what is currently allowed but were previously approved may remain as legal non-conforming signs even if moved or rebuilt on the same property.

    C. Electronic Message Signs. Electronic message signs shall be permitted subject to the following standards and requirements:
      1. Message Display and Communication Requirements:
        a. The EMS must comply with all sign display and illumination standards in Section 20-3.F.
        b. The display time of an EMS shall not be less than thirty (30) seconds per message display;

14

  c. The transition or change of message shall appear instantaneous without the use of special effects such as dissolve or fade;

  d. An EMS shall not exhibit any characteristics of movement or flashing and shall not use techniques defined as dynamic frame effect, scroll, or travel;

  e. No EMS message display shall resemble or simulate any warning or danger signal, or any official traffic control device, sign, signal or light or have the brilliance or intensity that will interfere with any official traffic sign, device or signal; and

  f. An EMS shall not include any audio message.

  g. An EMS shall not be directly facing any residentially zoned property.

2. Miscellaneous Requirements.

  a. No EMS shall be permitted to operate unless it is certified and equipped with all of the following mechanisms, programming and equipment and kept in proper working order at all times:

   1. A default mechanism that will cause the EMS to revert immediately to a default static display to zero lumens if the EMS or any component thereof malfunctions;

   2. A non-glare panel covering the electronic changeable copy display or other equivalent method approved by the Township to substantially reduce glare;

   3. A sensor or other device that automatically determines the ambient illumination and is programmed to automatically dim according to ambient light conditions; and

   4. A written certification from a sign manufacturer or other approved testing agency that the light intensity has been preset to conform to the brightness, illumination, and display standards established in this article and that the preset levels are protected from end user manipulation by password protected software or other method with certification shall be provided to the Township.

  b. The owner or controller must either turn off or adjust the sign to meet the brightness and illumination standards set forth in Section 12.07. The adjustment must be made within twelve (12) hours of a notice of non-compliance from the Township.

Sec. 20-8. - Billboards.

  A. *The following regulations apply to billboards*:

   1. The placement of billboard signs shall only be permitted on parcels immediately adjacent to M-59 (Hall Road). or M-3 (Gratiot Avenue).

   2. Billboard signs shall not exceed 385 square feet in area per side.

   3. Billboard signs shall not exceed 25 feet in height above the adjacent roadway.

   4. Billboards shall be set back a minimum of 10 feet from the right-of-way and side yards and shall not be located in any applicable clear zone. This includes any portion of the sign including but not limited to the sign, pole or base, catwalk, etc. Setback shall be measured by the closest portion of any part of the sign or its base to the right-of-way or side yard.

5. Billboards shall be setback a minimum 20 feet plus the height of the sign from any structure on-site or off-site.

6. Billboards shall not be located closer than 400 feet to any residentially zoned property, property with residential use, or property with an approved residential plan including consent judgements.

7. Billboards shall not be located closer than 2,250 feet from any other Billboard or off-premises signage conforming or non-conforming regardless if the other Billboard is within or outside the boundaries of the Township of Macomb. If an existing billboard is located on the south side of M-59, the distance shall be measured linearly along M-59. The measurement shall be taken from the point on M-59 closest to the existing billboard in a straight line, without crossing M-59, to the proposed location of the new billboard within the Township.

8. Billboards shall only be located on a parcel that is zoned C-4.

9. Double sided or "V-shaped" Billboards shall be allowed following the same regulations as set forth in this section. V-shaped Billboards shall not exceed an angle of 30 degrees.

10. Billboards containing EMS signage shall be permitted and shall conform to the standards set forth in section 20.C. and section 20-3.F.

11. Shall follow all Michigan Department of Transportation and Federal Highway Administration regulations where applicable.

12. No billboard shall be located on top of, cantilevered, or otherwise suspended above the roof of any building.

13. All billboards shall be constructed to withstand all wind and vibration forces that can normally be expected to occur in the vicinity. A billboard must be maintained so as to assure proper alignment of structure, continued structural soundness, and continued readability of message.

14. All Billboards shall be constructed with either a two pole support system where the poles would be located on the outer edges of the sign and poles and sign are encased in a decorative masonry enclosure to be approved by the Township or with a single pole support system where the single pole is completely powder coated.

15. No Billboard shall block or restrict the visibility of other uses or buildings, whether on- site or off-site.

B. *Existing billboards.* Billboard signs lawfully existing in the township on the date of adoption of this chapter shall be permitted to continue, subject to the provisions of section 20-11 (Nonconforming signs). The township building official shall be responsible for maintaining an inventory of the location and condition of all existing billboard signs in the township.

Sec. 20-9. – Miscellaneous signs.

A. *Free Standing Canopies*.
1. Canopy Sign.
   a. Location and number. Canopies may have one (1) additional sign to be located on the canopy for each public street frontage.
   b. Size. Said sign shall not exceed one-half (1/2) square foot of sign area for each one (1) linear foot of canopy face length adjacent to facing public street frontage.

B. *Drive-Through Accessory Signs*

16

    1. Accessory signs, menu boards and call boxes for a drive-in or drive-through business shall be permitted in addition to other signs permitted under these regulations;

    2. Such sign shall not exceed six (6) feet in height from finished grade, provided no single sign shall exceed forty-eight (48) square feet in area;

    3. Such signs shall not be visible from a public road right-of-way; and

    4. Illumination standards set forth in Section 20-3.F shall be met.

C. *Site entry features with signage.* Signage may be erected at the entrance to a residential subdivision, multiple-family residential development, elderly or senior housing development, mobile housing park, or office, research or industrial park, subject to the following (see illustration):

    1. *Number of signs.* Maximum of one (1) sign on each side of the entrance from a public street classified as a collector or major thoroughfare by the master thoroughfare plan for the township, county or state road authorities.

    2. *Setbacks.* Site entry features with signage shall be located outside of any street right-of-way, easements, or corner clearance area (clear vision), and shall further comply with the following minimum setback requirements:

        a. Ten (10) feet from any street right-of-way of a major thoroughfare.

        b. Ten (10) feet from a local street right-of-way.

        c. If the proposed sign is to be located at the entrance of a subdivision or development that contains a "landscape easement" as provided for in section 17-162 of the Township Land Division Ordinance the proposed entry sign shall be located within the required "landscape easement".

    3. *Sign area and height.* The maximum height for signs on a site entry feature shall not exceed six (6) feet, and the maximum sign area shall not exceed twenty-four (24) square feet.

    4. *Illumination.* Illumination of such signs shall be limited to external light sources and shall meet the standards set forth in Sec. 20-3.F.

D. *Multi-tenant Buildings.* Where a single building on a single parcel is occupied by more than one (1) business, dwelling or other use above the street level facade (such as a multiple-story office or commercial building), a sign with supplemental communication may be erected on the street level facade for these uses, subject to the following (see illustration):

    1. The multi-tenant building sign shall be separate from any permitted signs accessory to the uses occupying the street level facade.

    2. The maximum sign area shall not exceed three (3) percent of the signable area of the building.

    3. Illumination of such signs shall meet the standards set forth in Sec. 20-3.F.

E. Any site that contains private pedestrian or vehicle thoroughfares may erect one (1) private traffic sign per 25 feet of thoroughfare and 1 sign per entryway into a thoroughfare intersection which shall be no larger than six (6) square feet in area, four (4) feet in height and meeting requirements of the Clear Vision Zone of Section 10-0313 of the zoning ordinance.

Sec. 20-10. - Prohibited signs.

  The following types of signs are prohibited in all districts:

1. Signs that resemble and could be confused with an official highway, traffic or government sign, signal or traffic control device; or that obscure a sign, signal or traffic control device displayed by public authority to provide traffic instruction, direction or public information.

2. Snipe signs and/or all signs painted on or attached to trees, utility poles, streetlights, fences, streetlights or similar locations.

3. Signs placed upon or across any public right-of-way or upon any township property, except as expressly authorized by this chapter or the township board.

4. Signs that incorporate string lights; flashing, moving or intermittent lights of changing degrees or intensity; exposed incandescent bulbs; animation; or unshielded luminous tube lighting; or outline tubing sign.

5. Exterior string lights accessory to a non-residential use, other than holiday decoration or when used as an embellishment to landscape plant materials.

6. Except as provided in Section 20-7.B, of this chapter, any animated, flashing, or moving sign as defined herein, or signs that have any visible moving parts, mechanical movement, rotation, or other apparent visible movement achieved by action of normal wind currents; and signs that discharge any audible sound, odor or visible matter.

7. Roof signs, and signs that obstruct window or door openings, inhibit ingress or egress, or interfere with building ventilation.

8. Signs displayed without required permits or outside of permitted size, location or time period limitations.

9. Non-accessory and off-premises signs, including billboard signs per section 20-7 (Billboards), except as otherwise provided for in this chapter.

10. Any sign containing language or images which would be prohibited from use by the Federal Communication Commission (FCC) or would be found to be obscene, indecent or profane if broadcast by the FCC. Any display of the human body which would be considered public if such a display involved a person pursuant to the Township Ordinance prohibiting public nudity.

11. Abandoned or unlawful signs, , and any other sign not expressly permitted by this chapter.

12. Painted wall sign

13. Unlicensed or inoperable vehicles

14. Trailers.


Sec. 20-11. - Sign permit.

It shall be unlawful for any person to erect, alter, or relocate any sign, sign structure or sign area subject to permit approval under the provisions of this chapter, without first obtaining appropriate permit(s) from the township and paying the required permit fee according to the schedule of fees established by the township board.

A. *Required information.* The following shall be provided with any permit application:

1. *Application information.* Permit applications shall include the following information:

   a. The name, address and telephone numbers for the applicant, property owner, and sign contractor; street address or property location where the sign is to be located; and written consent of the property or sign owner to perform the proposed work.

   b. Where a proposed sign would encroach into the county or state road right-of -way, copies of permits or approvals from the county road authority or Michigan  Department of Transportation (MDOT) shall be provided.

   c. Any other information required by the township planner or building official necessary to show full compliance with this chapter, and other codes and ordinances enforced by the township.

2. *Plot plan.* A plot plan shall include a parcel survey, easements, dimensions, locations of all structures, and all existing and proposed signs on the zoning lot. If building-mounted signs are proposed, elevation drawings of all buildings on the site shall be provided showing all existing and proposed building-mounted signs and all windows existing or proposed.

3. *Construction drawings.* Specifications and drawings showing the materials, design,

dimensions, structural supports, electrical components, and method of illumination.

4. *License and insurance.* Every person who engages in the business of erecting, altering or dismantling signs in the township shall first submit proof of appropriate licenses and a liability insurance policy that indemnifies the Township of Macomb and its prior, present and future officials, representatives and employees from all damage suits or actions of every nature brought or claimed against the erector for injuries or damages to persons or property sustained by any person or persons through any act of omission or negligence of said erector, his servants, agents or employees. Said policy shall contain a clause whereby it cannot be canceled or changed until after written notice has been filed with the township planner at least thirty (30) days prior to the date of cancellation.

5. *Removal agreement or bond.* The building official may require a signed removal agreement, bond or other acceptable surety to guarantee the future removal of a sign.

B. *Duties of the building official.* It shall be the duty of the township planner and building official to review sign permit applications, plans, and specifications. The township shall issue such permits upon determinations by the building official that the proposed sign conforms to the requirements of this chapter, and all other applicable codes and ordinances enforced by the township.

C. *Sign permit revocable at any time.* Rights and privileges accrued under this chapter are mere licenses, and may be revoked upon violation of any provision of this chapter. If work authorized by an approved sign permit has not been completed within three hundred sixty-five (365) days after date of issuance, the permit shall become null and void, and a new permit shall be necessary to continue the project.

Sec. 20-12. - Nonconforming signs.

All existing signs that do not conform to the provisions of this chapter and ordinance shall be permitted to continue as nonconforming signs until removed or altered, at which time they shall conform to the provisions of this chapter and ordinance. Nonconforming signs shall be subject to the following:

A. *Good working order.* Nonconforming signs of shall be maintained in accordance with the requirements for all signs specified in section 20-3 (General standards). Nonconforming signs shall be maintained with all necessary structural and decorative parts, including but not limited to supports, sign frame, and electrical equipment. All sign copy areas shall be intact, and illuminated signs shall be capable of immediate illumination.

B. *Servicing.* Painting, servicing, cleaning or minor repairs to a nonconforming sign shall be permitted, provided that the sign is restored to its original design and all work is in compliance with the requirements for all signs specified in section 20-3 (General standards).

C. *Alterations.* Alterations to nonconforming signs shall be prohibited, except as follows:

1. *Sign copy area.* The sign copy area of a nonconforming sign may be altered, including replacement of sign panels and changes to the sign copy, provided that the degree of nonconformity is not increased, and provided that any sign illumination is brought into compliance with the provisions of subsection 20-3.F (Illumination).

2. *Billboard signs.* A nonconforming billboard sign may be altered, including replacement of sign panels and changes to the sign copy, provided that the sign area and height are not increased, and provided that any sign illumination is brought into compliance with the provisions of subsection 20-3.F (Illumination).

3. *Sign frame or structural elements.* Alterations to the sign frame or structural elements of a nonconforming sign shall be permitted, provided that the sign shall be brought into compliance with the maximum sign height and sign area standards for the location and type  of sign, as

specified in this chapter. Existing sign wiring and ground sign support structures may be re-used, provided that permitted alterations will not increase any nonconformity caused by inadequate sign setback.

Sec. 20-13. - Sign removal by township action.

A. *Abandoned or unlawful signs.* The township building official shall have the authority to determine if a sign is unlawful or has been abandoned, as defined in subsection 20-3.G (Definitions), and subject to appeal by an aggrieved person to the zoning board of appeals. The township building official may order the removal of such signs in accordance with the following procedure:

1. Any sign located on property in the Township that has been vacant for more than one hundred and twenty (120) days and any sign that pertains to a use or activity that no longer exists on property in the Township, shall be presumed to have been abandoned.

2. At such time as the building official shall become aware of the sign that is presumed to have been abandoned under subsection A. of this section, a notice of sign abandonment, declaring that the sign is deemed abandoned and directing the removal of the sign, shall be sent to the owner of the property.

3. If the owner of the property to whom such a notice has been sent claims that the sign has not been abandoned, such owner shall, within sixty (60) days from the date of the notice, file a written response to the director stating facts which rebut the presumption of abandonment and demonstrate the intent not to abandon the sign.

4. At the end of such sixty (60) day period, if a written response stating facts to rebut the presumption of abandonment has not been submitted to the building official, the sign shall be deemed abandoned, and a notice to such effect shall be sent to the owner.

5. If a written response stating facts to rebut the presumption of abandonment has been submitted to the director, and if the response demonstrates in the discretion of the building official that the sign has not been abandoned, the sign shall be permitted to remain until further evidence of abandonment appears, or some other basis for removal arises. If the director determines that the response fails to demonstrate that the sign has not been abandoned, the notice of sign abandonment and the response from the owner shall be placed upon the agenda of a meeting of the Zoning Board of Appeals, and notice of the time, place and date of the meeting shall be sent to the owner. After a review of the notice and response, and after affording an opportunity to be heard by the owner and the director, together with any and all other information and argument deemed appropriate by the Zoning Board of Appeals, the Zoning Board of Appeals shall make a final determination with respect to whether the sign has been abandoned.

6. Any sign deemed abandoned under subsection A.4 or found by the Zoning Board of Appeals to be abandoned under subsection A.5, shall be removed within ten (10) days of such determination, and a failure to do so shall constitute a violation of this section.

B. *Damaged signs.* Signs determined to be in a damaged condition by the building official shall be repaired or removed within sixty (60) days after notification by certified mail. If such action is not taken by the owner, operator or person having beneficial use of the property where the sign is located, the building official shall have the authority to order the repair or removal of the damaged sign. The owner shall reimburse the township for repair or removal costs, or the

20

township may place a lien on the property for such expenses.

C. *Unsafe signs.* The building official shall attempt to contact the sign owner to request that the unsafe condition be corrected. However, the building official may order the removal of any sign determined to be unsafe without prior notice. After removal, the building official shall notify the property owner by certified mail of the action taken and the reasons for the action. The owner shall reimburse the township for removal, storage and reclamation costs, or the township may place a lien on the property for such expenses.

D. *Nonconforming signs.* The elimination of nonconforming signs in the township is hereby declared to be for a public purpose and for a public use. The township may purchase nonconforming signs for the purpose of removal, or may initiate condemnation proceedings for nonconforming signs determined to be in violation of Section 20-12 (Nonconforming signs) requirements.

E. *Temporary signs.* Temporary signs affixed including snipe signs within a street right-of-way or corner clearance area, without a valid permit, or after permit expiration may be removed by the township without notice. Signs removed shall be held by the township for five (5) calendar days, after which the sign may be discarded.

Sec. 20-14. - Exceptions.

The zoning board of appeals (ZBA) shall have the authority to grant an exception from the strict application of these regulations, provided that such relief may be granted without substantially impairing the intent of this chapter. Application and consideration of sign exceptions shall be in accordance with the following procedures and standards:

A. *Applications for sign exceptions.* Any party who has been denied a permit for a proposed sign may file a request for an exception to this chapter with the ZBA within thirty (30) calendar days of the decision. Applications for exceptions from one (1) or more provisions of this chapter shall be submitted in accordance with the ZBA procedure of Section 10.2405 of the zoning ordinance. Following a public hearing the ZBA may consider the standards stated in section for the merits of granting an exception to particular requirements of this chapter. Notwithstanding anything contained in this Section 20–14, Section 20–14 shall not permit exceptions from the requirements set forth in sections 20–8.A.8 of this ordinance requiring that a billboard shall be located on a parcel that is zoned C – 4.

B. *Procedures for consideration of sign exceptions.* Applications for exceptions from the provisions of this chapter shall be considered by the ZBA in accordance with the procedures specified in Article 24 of the zoning ordinance (Zoning Board of Appeals).

C. *Exception standards for signs.* The ZBA shall consider the following standards while reviewing any application for an exception from one (1) or more provisions of this chapter.

1. *Obstructions.* Construction of a conforming sign would obstruct the vision of motorists or otherwise endanger public health or safety.

2. *Visibility.* A conforming sign would be blocked from the sight of passing motorists due to existing buildings, trees or other obstructions, that cannot reasonably be removed.

3. *Site features.* Construction of a conforming sign would require removal or severe alteration to significant features on the site, such as removal of trees, alteration of the natural topography, obstruction of a natural drainage course, or alteration or demolition of significant historical features or site amenities.

4. *Scale.* A sign that exceeds the allowable height or area standards of this chapter would be more appropriate in scale because of the large size or frontage of the premises or building.

5. *Aesthetics.* The exception shall not adversely impact the character or appearance of the building or lot or the neighborhood.

21